**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO. 20-22806-CIV-COOKE/GOODMAN**

KENETHIA DIXON,

      Plaintiff,

v.

FULL CIRCLE HEALTH CARE, INC., et al.,

      Defendants.

_____/

**REPORT AND RECOMMENDATIONS ON**
**DEFENDANTS' SUMMARY JUDGMENT MOTION**

In this Federal Fair Labor Standards Act ("FLSA") case, Plaintiff Kenethia Dixon

filed a four-count complaint stemming from her employment at Defendant Full Circle

Health Care, Inc. Each of Plaintiff's four claims are raised against all Defendants.[1] Plaintiff

raises three federal claims against all Defendants for (1) Overtime Wage Violation; (2)

Federal Minimum Wage Violation; and (3) Failure to Promptly Pay Wages. [ECF No. 1-

1]. Plaintiff also raises a single state claim under the Florida Minimum Wage Act against

all Defendants for a Florida Minimum Wage Violation. *Id.*

---

[1]     Defendants' Summary Judgment Motion represents that Plaintiff has stipulated to
dismiss the claims against Academy of Medical Solutions, LLC. [ECF No. 87]. However,
as of this Report and Recommendations, no formal notice of dismissal has been filed by
Plaintiff as to any defendant.

Defendants filed a summary judgment motion[2] and statement of alleged undisputed facts, seeking summary judgment on all claims based on Plaintiff's purported status as an exempt executive/administrative employee. [ECF Nos. 86; 87]. Plaintiff filed a response, which includes her additional alleged undisputed facts. [ECF Nos. 88; 89]. Defendants filed a reply. [ECF Nos. 90; 91]. District Court Judge Marcia G. Cooke referred the motion to the Undersigned for a Report and Recommendations. [ECF No. 99].

For the reasons outlined below, the Court **respectfully recommends** the District Court **deny** Defendants' summary judgment motion on all counts. At bottom, however, there are many factual disputes about critical issues and this status renders summary judgment unavailable.

## I. Background

### A. Complaint

Plaintiff Kenethia Dixon filed a four-count complaint against Defendants Full Circle Health Care, Inc. ("Full Circle"), her employer, Academy of Medical Solutions ("Academy"), her employer, Mark Spence, a corporate officer of the two corporate Defendants, and Amalia Pineda, a corporate officer of the two corporate Defendants. Plaintiff was employed by Defendants as a salaried patient coordinator/medical assistant

---

[2] Defendants' Motion is actually titled "Renewed Motion for Final Summary Judgment." Defendants filed a renewed motion because their first iteration of the motion did not comply with the Local Rules and was denied without prejudice by the District Court. [ECF No. 85].

for approximately thirteen years. Between approximately March 16, 2015 and July 15, 2019, Plaintiff regularly worked an average of 45 to 60 hours a week. Plaintiff alleges she was not paid for the hours worked in excess of 40 a week at either the minimum wage rate or at the overtime rate.

Plaintiff requests compensatory damages, liquidated damages, and reasonable attorney's fees and costs.

### B.      Factual Background

**Introductory Remarks About the "Facts"**

The "facts" are generated from the paragraphs in each party's Statement of Facts or Reply Statement of Facts and, when there is a legitimate, non-incredible dispute, Plaintiff's version of the facts is used (and, when used, are written in italics). The Undersigned sometimes altered the wording of an undisputed fact for stylistic and/or grammatical purposes. In addition, to enhance readability, I removed the specific record citations. They can be found in the initial source document, if needed.

The Undersigned would usually title this section "Undisputed Factual Background," but Plaintiff disputed 39 of Defendants' 44 facts and Defendants disputed all three of Plaintiff's. This is a remarkable number of purported factual disputes, especially considering that many of the factual statements refer to only the existence of documents.

If a party argued that a fact was disputed but did not provide record evidence to

support the contention, then I deemed the fact to be *undisputed* if otherwise supported by record evidence.

I also ignored disputes that were not *actual* disputes. In perhaps one of the most egregious examples of this type of non-dispute dispute (of which there are many), Plaintiff disputes that she sent an email to three other medical assistants telling them how to correctly document patient files, arguing that she sent the email only on Dr. Spence's behalf. This is not a legitimate and actual factual *dispute*; it is an **additional fact** which Plaintiff is permitted to add in her own response if she believes it to be material. This non-dispute is similar to the following illustration: A defendant submits a statement of facts which contends through record evidence citations that a traffic light was green for defendant at the time of the vehicle collision at issue and the plaintiff's response claims that this is disputed because it was raining at the time of the collision.

The following facts are undisputed unless otherwise noted. The numbered paragraphs correspond to the numbered paragraphs in Defendants' Statement of Material Facts. [ECF No. 86].

1.     Full Circle is an obstetrician-gynecologist ("OB-GYN") medical office. Plaintiff was first employed there as a medical assistant in 2006. She began as an hourly employee and later became a salaried employee. *Plaintiff was never classified as a supervisor, nor did she exercise supervisory responsibilities*.

2.    *Plaintiff was the highest paid employee according to W-2 wages, but Mark Spence and Maurice Spence both made more than Plaintiff because they were often paid in ways unreported on W-2 forms.*

3.    In June 2017, Plaintiff received a bi-weekly salary of $2,264.36.

4.    In 2017, Plaintiff earned $54,788.67. *Maurice Spence and Mark R. Spence earned more than her and were often paid in ways unreported on W-2 forms.* An Administrative Assistant earned $33,232.00.

5.    In 2017, other medical assistants earned less money than Plaintiff.[3]

6.    In 2016, Plaintiff's W-2 shows she made $55,369.51. W-2s for other employees show Maurice Spence made $39,294.27, Debbie Bricette made $26,649.18, Yadria Perez made $14,508.27, Yaid Perez made $25,067.23, and Rose Cesar made $17,802.43.[4]

---

[3]    The Undersigned is aware that Plaintiff disputes this assertion. However, the dispute label references as evidentiary support only a paragraph from her declaration in which she says she does not believe these numbers are correct. This is insufficient to establish a contrary fact or a factual dispute. *See Ellis v. England*, 432 F.3d 1321, 1327 (11th Cir. 2005) ("[A]ffidavits based, in part, upon information and belief, rather than personal knowledge, are insufficient to withstand a motion for summary judgment.").

[4]    The Undersigned is aware that Plaintiff disputes this assertion. However, the dispute label references only a paragraph from her declaration in which she says she does not believe these numbers are correct. This is insufficient to establish a contrary fact or a factual dispute. *See Ellis*, 432 F.3d at 1327 ("[A]ffidavits based, in part, upon information and belief, rather than personal knowledge, are insufficient to withstand a motion for summary judgment.").

7.      In 2016, Maurice Spence, in an employment verification document, swore that Plaintiff was a "Supervisor – Medical Assistant." In June 2017, Plaintiff signed a Uniform Residential Loan Application, stating that she was a "Supervisor Medical Assistant."[5]

8.      *Plaintiff did not train or supervise medical assistants.*

9.      *Plaintiff's job was not as a trainer and she did not supervise, train, or oversee the medical assistants.*

10.     *Plaintiff did not have a primary duty to manage a sub-department because there was no "sub-department" and she was not a supervisor.*

11.     AdvancedMD was a scheduling software program used by Full Circle. It had a dedicated column called "Kenethia" and no other medical assistant has a column with their name. Pregnancy-related events were recorded in the "Kenethia" column in AdvancedMD.[6]

---

[5]     The Undersigned is aware that Plaintiff disputes this assertion. However, her dispute label cites only to a deposition transcript in which Maurice Spence says he never considered Plaintiff a supervisor. While this statement may be inconsistent with the documents Defendants cite, and could be considered an *additional* fact, it does not negate or create a factual dispute as to whether Maurice Spence or Plaintiff signed documents under oath describing her position as supervisor.

[6]     The Undersigned is aware that Plaintiff disputes this assertion. However, her dispute label cites only to a portion of her deposition in which she says she did not know why the column was labeled with her name. While Plaintiff may not like the fact that this column exists, she confirmed its existence in her deposition. Therefore, there is no actual factual dispute to the statement made by Defendants in this Paragraph.

12.     *Plaintiff was not a supervisor who maintained the list of high-risk patients.*

*Maintenance of the list was handled by the front desk.*[7]

13.     *Plaintiff did not oversee whether other medical assistants sent their lab results to*

*the hospital, nor did she discipline the medical assistants.*

14.     *All medical assistants were responsible for scheduling NSTs and sonograms.*

15.     *Plaintiff and the other medical assistants shared the same scheduling*

*responsibilities.*

16.     *Plaintiff and the other medical assistants would go to the hospital when asked to*

*obtain updated patient records.*

17.     Jessie Trice Community Health Center ("JTCHC"), a medical facility that

referred patients to Dr. Spence for deliveries, once had a billing dispute with Full Circle

and sent an emailed directed to Plaintiff regarding the dispute.[8]

18.     *Plaintiff did not resolve this billing dispute.* Plaintiff would, *along with other*

*medical assistants*, travel to the hospital to confirm names to *give to Maurice Spence for billing*

*purposes.*

---

[7]     The email referenced by Defendants does not support an irrefutable contradiction
to Plaintiff's statement.

[8]     Once again, Plaintiff disputes this paragraph (likely because she does not agree
with the inference), but her record citations do not create a *dispute* to the fact this email
was sent. If Plaintiff believes the email was fabricated or that Defendants were
misrepresenting the contents, then she could dispute the factual contentions. However,
the record citations she provided in support of her dispute are more appropriately
characterized as additional facts.

19.     *Plaintiff collected co-pay cash for a brief period because Full Circle had no other employees familiar with the procedure.*

20.     *Plaintiff verified patient insurance for a brief period because Full Circle's receptionist had quit, and Dr. Spence made sure everybody knew how to do everybody else's job.*

21.     Plaintiff was a registered Full Circle Administrator with the Florida Agency for Health Care Administration ("AHCA"), which is an agency tasked with receiving reports regarding early pregnancy terminations. *Plaintiff, along with other medical assistants, were responsible for reporting early pregnancy terminations to AHCA.*

22.     Plaintiff reported early pregnancy terminations to AHCA. *So did other medical assistants.*

23.     AHCA produced documents where Plaintiff was Full Circle's contact person, including an email to Plaintiff stating, "Your request has been approved for the following: Application: Induced termination of Pregnancy, Role: ITOP Provider, Facility: Full Circle Healthcare."

24.     AHCA was served with a subpoena *duces tecum* to produce: "Any and all documents which evidence the name [sic] Defendant's contact person or person in charge."

25.     AHCA produced emails showing that Plaintiff was the contact person.

26.     Plaintiff registered the Full Circle account and user agreement with AHCA.

27.     *Dr. Spence and all medical assistants had the combination to the safe where the*

*drugs were kept.*

28.     A 2019 State of Florida, Department of Health Report lists Plaintiff as the "Person in Charge."[9]

29.     *Plaintiff did not regularly direct the work of other medical assistants. An email she sent containing directions was a dictation of instructions given by Dr. Spence.*

30.     *Plaintiff dictated Maurice Spence's reprimand of another medical assistant and emailed it to the other medical assistant.*

31.     *Maurice Spence approved the medical assistant's vacations, late arrivals, and early departures.*

32.     *Plaintiff sent another email on behalf of Maurice Spence informing other medical assistants if they did not come in for their weekend shifts, then they would be terminated.*

33.     *Plaintiff had no discretion to set the schedule or hours of the other medical assistants.*

34.     *Plaintiff never created a new system to document surgical procedures.*

35.     *Plaintiff never solved an issue regarding the other medical assistants' use of examination rooms.*

---

[9]     The Undersigned is aware that Plaintiff disputes this fact. However, Plaintiff's dispute label is to the meaning that should be given to the document, not to the document's existence. Defendants' Exhibit "T" lists Plaintiff as the person in charge and Plaintiff has presented no evidence or statement that it is incorrect or that there is some error in the document. Rather, she states that was not the person in charge. That very well may be true, but it does not change the fact that the document exists.

36.     *100% of Plaintiff's time was spent as a medical assistant.*

37.     Plaintiff wrote an email to Maurice Spence informing him that Debbie was on call the weekend of March 25, 2017.[10]

38.     *Plaintiff sent an email to other employees in the office containing passwords and login information which had previously been written on a piece of paper sitting at the front desk.[11]*

39.     *Plaintiff did not maintain an inventory of medical supplies. The lists were in reference to what other medical assistants were requesting.*

40.     Maurice Spence sent an email to the medical assistants, including Plaintiff (who was copied on the email), informing the medical assistants of their obligations regarding stocking the examination rooms, and the other medical assistants were told to direct questions to Plaintiff.[12]

---

[10]     Plaintiff indicates that she "disputes" this fact. However, in her dispute of the so-called dispute, she repeats the underlying fact in different words, saying that, after looking at the schedule, she emailed Maurice Spence and told him who was on call. This does not create an actual dispute.

[11]     Even if Plaintiff had not disputed this fact, the Undersigned still would have not adopted Defendants' version of the so-called fact because the cited evidence does not support the claim that "Plaintiff created different passwords and usernames . . . ."

[12]     Although Plaintiff "disputes" this fact, her challenge refers to her declaration, which, in relevant part, states, "[i]f the other medical assistants had any questions about what was supposed to be in the [examination] rooms, apparently Maurice Spence said to ask me because whatever question it was[,] I most likely [knew] the answer since I [had been] there the longest. As stated previously, this is not a *dispute*. Plaintiff agrees that the email exists and that it says what Defendants says it says.

41.     A nursing university reached out to Plaintiff as the believed point of contact regarding establishing a credentialing agreement. *Plaintiff printed the attachment and gave it to Dr. Spence to fill out.*[13]

42.     *Plaintiff was not the Full Circle point of contact for labs.*

43.     Although a bill from Dr's Toy Store lists Plaintiff as the person to bill and ship to, *she was not the contact person regarding repairs of medical equipment.*

44.     *Full Circle requested Plaintiff be included on emails moving forward because most of the remaining staff had quit.*

Additional Facts Highlighted by Plaintiff

45.     Plaintiff worked overtime and did not receive overtime wages.

46.     The decision to reclassify Plaintiff as a salaried employee was to avoid paying her overtime.

47.     Plaintiff did not have the authority or independent discretion to (1) interview or participate in the selection of employees to be hired as medical assistants or any other position; (2) hire employees; (3) establish pay rates; (4) approve promotions; (5) adjust rates of pay; (6) make disciplinary decisions; (7) fire employees; (8) determine personnel numbers; (9) control the hours of anybody employed; (10) adjust employee's hours; (11) determine which employees can work overtime; (12) approve or reject leave

---

[13]     Although Defendants' facts state that Plaintiff responded on behalf of Full Circle *to the University*, the attachment shows Plaintiff sending an email to only another *employee* of Full Circle, not a university official.

time; (13) deviate from superior's rules; or (14) set the time trainings will occur.

## II.      Legal Standard

### A.      Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (citation omitted). Thus, the Court may enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The moving party must "show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). If the movant does so, then "the burden shift[s] to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Id.* A genuine factual dispute exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1358 (11th Cir. 1999). The opposing party must proffer more than "a mere scintilla of evidence" to show "that the jury could reasonably find for that party." *Abbes v. Embraer Servs., Inc.*, 195 F. App'x 898,

899-900 (11th Cir. 2006) (internal quotations omitted).

When deciding whether summary judgment is appropriate, the Court views all facts and resolves all doubts in favor of the nonmoving party. *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1247 (11th Cir. 2013). However, "if the non-movant's response consists of nothing 'more than a repetition of his conclusional allegations,' summary judgment is not only proper, but required." *Bentley Motors Corp.*, 976 F. Supp. 2d 1297, 1309 (M.D. Fla. 2013) (citing *Morris v. Ross*, 663 F.2d 1032, 1034 (11th Cir. 1981).

## III.   Analysis

### A.   Factual Contentions

Defendants argue that Plaintiff's assertion of factual disputes should be ignored by the Court because "[c]onclusory affidavits do not create disputed facts." [ECF No. 90]. According to Defendants, because Plaintiff's affidavit is "conclusory," "it does not set forth facts to form a basis for personal knowledge," and "contradicts [her] deposition testimony," it has no probative value and cannot establish a disputed fact.

Defendants' argument on these points, however, mischaracterizes the law and stretches the meaning of the terms "conclusory" and "contradiction."

First, Defendants argue that Plaintiff's affidavit is conclusory because she "concluded" that "[she] did not manage the business or any department or subdivision of the business," "[she] did not supervise or train the medical assistants . . . [and] did not interview or train any medical assistant," and "[her] primary duty was not to 'manage

the sub-department' where the medical assistants worked."

Although Defendants characterize these assertions as "conclusions" and attempt to fit them in *Christy v. Custom Services, LLC's* statement that "[c]onclusory allegations without specific supporting facts have no probative value," they haven't explained how Plaintiff's affidavit is not "[a] non-conclusory affidavit" which "can create a genuine dispute concerning an issue of material fact, even if it is self-serving and/or uncorroborated." No. 19-61266, 2020 WL 5514185, at *2 (S.D. Fla. Aug. 5, 2020).

Defendants' statement that Plaintiff's positions are conclusory is, itself, conclusory. Conclusory is defined as "[e]xpressing a factual inference without stating the underlying facts on which the inference is based." Conclusory, Black's Law Dictionary (11th ed. 2019).

If, for example, Plaintiff's affidavit contained a singular statement that "Dr. Spence has a motive to lie," then this would be a conclusory statement. *See, e.g., James v. City of Montgomery*, 823 F. App'x 728, 732 (11th Cir. 2020) (rejecting the plaintiff's claim that a lesser-qualified white male detective received additional training as conclusory because it provided no additional facts); *Tucker v. Morris State Bank*, 154 F. App'x 183, 186 (11th Cir. 2005) (rejecting the plaintiff's statements that the defendant committed extortion and violated RICO as conclusory because there were not additional facts). Plaintiff would need to support this hypothetical inference with facts establishing why Dr. Spence might have a motive.

In contrast here, Plaintiff's statement that she did not train other medical assistants, while simple, is not impermissibly conclusory because it is not a mere fact-free inference or allegation -- it is a statement of fact. Moreover, it is a statement of fact backed, in detail, by the description of her job duties as a medical assistant, which did not include training other medical assistants, and her statement of who was actually in charge of the training of medical assistants. [ECF No. 89-1, ¶¶ 4-5].

Defendants' interpretation of "conclusory" would also vitiate Dr. Spence's affidavit submitted in support of their motion. By way of example, under Defendants' definition of conclusory, Dr. Spence's statement that "[he is] the owner of Defendant FULL CIRCLE HEALTH CARE, INC." has no probative value because it is a statement without any factual backing. However, this is not the appropriate interpretation, and the Undersigned accepts both Dr. Spence's and Plaintiff's affidavits as non-conclusory unless stated otherwise.

Defendants next argue that Plaintiff's affidavit is contradictory. For example, Defendants argue there is a contradiction between Plaintiff's deposition statement "I'm not sure why [Dr. Spence] put [the column] in the system and put Kenethia" and her declaration statement "Dr. Mark R. Spence created that slot so that NST patients could be scheduled there . . . ." [ECF No. 90, p. 5]. However, a review of the surrounding deposition testimony (for more-complete context) and Plaintiff's declaration reveals a consistent picture:

Plaintiff: Okay. So what was happening is we had a system called AdvancedMD. We had our scheduled patients. So what was happening is they were scheduling the NST and sonogram patients, mixing them up with our regular patients. So what Dr. Spence did is he created a column in the system that says Kenethia so that they can schedule all sonograms and NST under that column that says Kenethia, instead of mixing them up with our regular patients.

Q: But this is talking about Kenethia's schedule handbook.

Plaintiff: It's no schedule handbook. I have no – she's talking about the section in AdvancedMD that says Kenethia. That section is where all the NSTs and sonograms would go.

Q: Okay. So did the other [medical assistants] also have a section in there with their names and a schedule handbook?

Plaintiff: No.

Q: Or was it just you?

Plaintiff: It was just me. And why he named it Kenethia, I don't know. He could have put sonograms. I'm not sure why he put it in the system and put Kenethia. But my name was there only so they know to put the NST and sonograms on that column. . . .

[ECF No. 86-1, pp. 117-18].

The column that Dr. Mark R. Spence created in Advanced MD that said "Kenethia" was created because the staff kept putting non-stress tests (NST and BPP) patients with OB/GYN patients. I have no idea why Dr. Mark R. Spence labeled this column "Kenethia."

[ECF No. 89-1, ¶ 10].

Likewise, Defendants also allege an additional contradiction between Plaintiff's deposition and her subsequent affidavit:

Plaintiff: This is an e-mail that I can recall, has to be Hialeah – okay. So we

had a – so we had three offices. So we had one in Hialeah, we had the one at Northshore, Suite 306, and we had the downstairs Suite 203. Everything that Maurice orders, all the inventory comes to Suite 306. So this had to be a situation where I was going to Hialeah, probably for the afternoon, and he probably told her to send me a list so that I can take it with me when I go to Hialeah.

Q: Why would you need to take a list of needed inventory when you went to Hialeah, it could have just been e-mailed?

Plaintiff: No. No.

Q: Why would you specifically have to take it?

Plaintiff: No, you're not understanding.

Q: Okay.

Plaintiff: So all the supplies came to Northshore Suite 306.

Q: Okay.

Plaintiff: So whenever there's supplies needed it's going to get delivered to the Northshore - -

Q: Okay

Plaintiff: -- Suite 306. So if there's any supplies that they need in Hialeah, we have to take it from Northshore, like I had to get the box of drapes, box of gloves, the glucose, everything put in my car to take to Hialeah. So I'm assuming he asked her to send it to me if I was – since I was – if I was probably going to Hialeah that afternoon or the next day, I'm not sure. So that way, when I go to Hialeah I can have those items that she need[ed] in my car to get to them, because they're going to need it.

\*\*\*

Q: So do you remember instances where one office requested supplies from the other one?

Plaintiff: Do I remember who?

> Q: Instances where one office, the Hialeah office requested supplies from the other office?
>
> A: Yeah. Because any time they need supplies it had to come to Northshore, because Northshore is the office that had all the supplies. . . .

[ECF No. 86-1, pp. 152-53].

> I did not maintain inventory of medical supplies. The list was sent to me by Ms. Perez so that I knew what supplies to take with me to the Hialeah location the following day when I was going to be reporting there. That was the time when Full Circle had three offices and they would have the staff rotating between the Hialeah clinic and Suites 203 and 306.

[ECF No. 89-1, paragraph 35].

Just as Defendants' first example was not a contradiction, this is also not an actual contradiction. Although Plaintiff's recollection of the specific date on which she was to travel to Hialeah (i.e., "that afternoon or the next day") may have evolved and become more specific, her overall comments in the context of the full line of deposition questioning (rather than the piecemeal portion Defendants highlight) reveal her position on the issue remains fundamentally the same.

Having evaluated Defendants' claims of conclusory and contradictory statements, the Undersigned rejects these arguments to the extent they are inconsistent with the Factual Background outlined in this Report and Recommendations.

### B.      FLSA Exemptions

Defendants argue that Plaintiff is exempt from FLSA coverage because she worked

as an executive/administrative employee. According to Defendants, Plaintiff's primary duties were managerial, she made nearly twice as much as other medical assistants, she regularly directed the work of other medical assistants, she had the authority to fire or recommend firing, she kept an inventory of medical supplies, she ensured the office was legally compliant with its obligations, and she supervised, trained, and disciplined the other medical assistants.

Plaintiff claims that she was merely a medical assistant. She says that she did not have authority or independent discretion to (1) interview or participate in the selection of employees to be hired as medical assistants or any other position; (2) hire employees; (3) establish pay rates; (4) approve promotions; (5) adjust rates of pay; (6) make disciplinary decisions; (7) fire employees; (8) determine personnel numbers; (9) control the hours of anybody employed; (10) adjust employee's hours; (11) determine which employees can work overtime; (12) approve or reject leave time; (13) deviate from superior's rules; or (14) set the time trainings would occur.

Essentially, Plaintiff and Defendants factually disagree about nearly every aspect of Plaintiff's role at Full Circle. In Defendants' view, Plaintiff was the supervisor/manager of all the medical assistants, as well as the office point-of-contact for outside agencies. In Plaintiff's view, she was simply the most-experienced medical assistant (because the other medical assistants regularly resigned or were fired) and would sometimes send emails or handle tasks on behalf of her superiors.

Relevant to this matter, Section 213(a)(1) of the FLSA provides that its minimum-wage and overtime provisions do "not apply with respect to ... any employee employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1). The employer bears the burden of establishing that an exemption applies. *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 594 (11th Cir. 1995). Specifically, the employer must establish the exemption by "clear and affirmative evidence," *Klinedinst v. Swift Investments, Inc.*, 260 F.3d 1251, 1254 (11th Cir. 2001), and the applicability of the exemption is to be construed narrowly, against the employer. *Avery v. City of Talladega*, 24 F.3d 1337, 1340 (11th Cir. 1994).

Defendants allege that Plaintiff is exempt from the FLSA's overtime requirements because the undisputed facts demonstrate that Plaintiff falls within either or both the executive and administrative exemptions.

As stated previously, Plaintiff disputes nearly the entirety of Defendants' factual allegations. Although some of her disputes are not actual disputes, as discussed above, most of the disputes are legitimate disputes which concern the core factual issues in the case.

These *bona fide* disputes defeat Defendants' ability to meet their burden at the summary judgment stage because the disputes surround necessary facts which, when actually disputed, must be resolved at trial. Once the disputed facts are removed, Defendants are left with a few sparse emails scattered over multiple years which they

claim establish Plaintiff falls within one of the FLSA's overtime exemptions. As discussed below, these emails are insufficient for Defendants to meet their burden under either exemption.

### 1. Executive Exemption

There is no "'categorical approach' to deciding whether an employee is an exempt executive." *Morgan v. Fam. Dollar Stores, Inc.*, 551 F.3d 1233, 1269 (11th Cir. 2008). Rather, the Court is to engage in a fact-intensive inquiry because the answer is often found in the details. *Id.* An employer must establish three factors (the list begins at number two because the first factor is salary, which neither party disputes is not met in this case) to demonstrate that an employee is a bona fide executive. The employee must be one:

> (2) Whose **primary** duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;
>
> (3) Who customarily and regularly directs the work of two or more employees; and
>
> (4) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of employees are given particular weight.

29 C.F.R. § 541.100 (emphasis supplied).

Here, there is dispute between the parties as to whether Plaintiff's job duties satisfy *any* of the three requirements, let alone all three of them.

As to the first requirement, the regulations provide the following examples of

managerial tasks:

> [I]nterviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing the work of employees; maintaining production or sales records for use in supervision or control; appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status; handling employee complaints and grievances; disciplining employees; planning the work; determining the techniques to be used; apportioning the work among the employees; determining the type of materials, supplies, machinery, equipment or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety and security of the employees or the property; planning and controlling the budget; and monitoring or implementing legal compliance measures.

29 C.F.R. § 541.102.

Whether the management aspect of an employee's job is a primary duty is assessed based on whether the tasks are the "principal, main, major or most important duty that the employee performs." 29 C.F.R. § 541.700(a). "[E]mployees who spend more than 50 percent of their time performing exempt work will generally satisfy the primary duty requirement." 29 C.F.R. § 541.700(b). "Time alone, however, is not the sole test." *Id.*

Defendants cannot meet this burden when viewed in a light most favorable to Plaintiff. After removing the facts Plaintiff successfully disputes, the Undersigned is left with only the following facts to support Defendants' contention that Plaintiff qualifies as a bona fide executive: (1) Plaintiff and Maurice Spence both used the term "supervisor" as Plaintiff's job title on a sworn document; (2) Plaintiff made more money than the other medical assistants; (3) A single email to Plaintiff from JTCHC regarding a billing dispute;

(4) A single email from Plaintiff informing other medical assistants that if they did not come in for their weekend shifts then they would be terminated; (5) An email from Maurice Spence to the other medical assistants telling them to direct questions to Plaintiff; and (6) A single email of a bill for Dr's Toy Store to Plaintiff.

The documents signed by Maurice Spence and Plaintiff are of little value to the Undersigned. "Whatever job title Defendant chose to give Plaintiff is irrelevant as 'the regulations specifically require an examination beyond an employee's title to the specific duties performed by the employee.'" *Selwood v. Ocean Divers, Inc.*, No. 05-10131, 2006 WL 8433927, at *4 (S.D. Fla. Sept. 29, 2006) (quoting *Posely v. Eckerd Corp.*, 433 F. Supp. 2d 1287, 1300 (S.D. Fla. 2006) (citing *Wagner v. Murphy Oil USA, Inc.*, 139 F. App'x 131, 132 (11th Cir. 2005))); *see also, e.g.*, 29 C.F.R. §§ 541.102, 541.103; 29 C.F.R. § 541.2 ("A job title alone is insufficient to establish the exempt status of an employee. The exempt or nonexempt status of any particular employee must be determined on the basis of whether the employee's salary and duties meet the requirements of the regulations in this part.").

Thus, the Undersigned turns to the facts which Defendants claim underpin a finding that Plaintiff was a bona fide executive. Defendants emphasize that Plaintiff's salary was greater than her coworkers, she handled billing, and she trained the other medical assistants.

Although Plaintiff was paid substantially more money than the other medical assistants, this fact does not alone establish that management was one of Plaintiff's

primary duties. *See* 29 C.F.R. § 541.700 (relationship between employee's salary and wages of other employees is one factor to consider). Giving great weight to this factor would ignore both Plaintiff's tenure with Full Circle as well as her substantial experience as a medical assistant when compared to her colleagues. Being the most experienced, longest tenured, and highest paid medical assistant, however, does not convert Plaintiff into a bona fide executive. These factors would, on the other hand, explain the higher salary in a way which would not require her to be an exempt managerial employee.

Likewise, the attached emails are insufficient for Defendants to meet their burden, even when considered in conjunction with Plaintiff's higher salary. Plaintiff's relevant term of employment spanned over four years. [ECF No. 1-1]. It can hardly be said that Plaintiff's *primary* duties were to discipline employees or handle Full Circle's billing based on a single email threatening termination and two emails involving billing disputes. The result could have been different if there were multiple calendar invites scheduling trainings, myriad emails between Plaintiff and other medical assistants where she required them to attend additional trainings, bills being regularly submitted and paid for by Plaintiff, or evidence that Plaintiff was the only authorized user on Full Circle's bank account or credit cards. That evidence, if it exists, has not been submitted.

Moreover, Plaintiff disputes the *meaning* behind these emails, explaining that they were either dictated for her to send on behalf of an individual with the actual authority or were sent to her incorrectly.

Defendants also try to claim that Plaintiff failed to dispute that she was responsible for "'scheduling or overseeing the scheduling,' which is in essence supervising." [ECF No. 90]. For this proposition, Defendants cite to ¶ 15 of their material facts, which states, in relevant part: "When a physician determined the date of a cesarean or induction, it was Plaintiff's sole responsibility to oversee or delegate the scheduling of the cesarean or induction."[14] Then Defendants cite *Posely v. Eckerd Corp.*, 433 F. Supp. 2d 1287, 1304 (S.D. Fla. 2006) and argue that because the *Posely* Court held that employees who are "responsible for overseeing the day-to-day operations of their stores" qualified as bona fide executives, so must Plaintiff.

Overseeing the scheduling of a date *already decided by a physician* is markedly different than overseeing the operation of an entire store. Under Defendants' reasoning, any assistant who handled or oversaw the most miniscule aspect of a business (perhaps overseeing whether a refrigerator is stocked with bottled water) would qualify as a bona fide executive. Similarly, it would mean that every receptionist or front desk staffer in a doctor's office who schedules a follow-up appointment would be classified as an exempt executive.

At bottom, whether Plaintiff's primary duty was management and whether

---

[14]    Notably, Defendants' support for this assertion comes from a declaration by Dr. Spence and the subsection cited as support suffers from the very same issue they claim precludes the Court from considering Plaintiff's declaration, i.e., it qualifies as their definition of "conclusory." [ECF No. 86-2, ¶ 13].

Defendants are entitled to an executive exemption is a matter left for the jury. The Undersigned is required to narrowly construe the exemption and apply it to only situations "clearly and unmistakably within the terms and spirit of the exemption." *Barreto v. Davie Marketplace*, LLC, 331 F. App'x 672, 674 (11th Cir. 2009). As it stands, the case is riddled with factual disputes and, when viewing the evidence in the light most favorable to the non-moving party, Defendants have failed to meet their burden to establish by clear and affirmative evidence that Plaintiff's employment falls under the executive exemption.

### 2. Administrative Exemption

An employee falls under the administrative exemption if she (1) earns no less than $455 per week, (2) has primary duties that involve "the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers," and (3) exercises "discretion and independent judgment with respect to matters of significance" in performing her primary duties. *Rock v. Ray Anthony Int'l, LLC*, 380 F. App'x 875, 877 (11th Cir. 2010) (citing 29 C.F.R. § 541.200(a)(1)–(3)).

This type of work "is ancillary to the employer's principal production activity, and includes work in areas such as finance, accounting, budgeting, quality control and purchasing." *Kessler v. Lifesafer Serv. Providers, LLC*, 545 F. Supp. 2d 1244, 1246 (M.D. Fla. 2008).

In support of their claim that Plaintiff is exempt from overtime protections as an administrative employee, Defendants claim that Plaintiff supervised and managed the medical assistants, ensured legal compliance with AHCA, the DEA, and other governmental entities, maintained a record of each patient, was the sole person responsible for overseeing high-risk pregnancies, and was the contact person for outside entities.

Certainly, *if* Plaintiff performed all these tasks and was the contact person for all of these outside entities, then she may very well qualify as an administrative employee. However, the Undersigned need not reach that determination because all of these facts are in dispute.

Plaintiff claims that she did not train or supervise the other medical assistants; she denies ensuring compliance with governmental entities; she denies having any more oversight of high-risk pregnancies; and she denies being the contact person for outside entities. Defendants' reliance on her maintenance of patient records is a misguided attempt to attribute administrative meaning to a job aspect which appears to be largely clerical.

Although Defendants ask this Court to disregard Plaintiff's contrary assertions in light of the attached emails and government documents, these non-affidavit-based exhibits are sparse and not as probative as Defendants claim. In Defendants' reply, they claim that no reasonable juror could believe some of Plaintiff's statements and that they

should therefore be disregarded. Applying this logic, the Undersigned is unconvinced that, based on the submitted records and emails alone, every reasonable juror would find that these ancillary duties were also Plaintiff's primary duties.

For example, if one of Plaintiff's *primary* duties was managing the training, supervision, leave/vacation requests, discipline, and termination of other medical assistants during the four years at issue in this case, a reasonable juror would expect to see more than the handful of vague emails Defendants submitted in support of their motion for summary judgment. Despite Defendants' argument that it is undisputed that Plaintiff had "independent discretion to reduce hours of work for [medical assistants], schedule time off or vacation, and to solve grievances," they have not attached a single email from a medical assistant to Plaintiff requesting time off or vacation, a single email or chain in which Plaintiff is dictating the hours or scheduling,[15] nor a single email or document scheduling training sessions to be conducted by Plaintiff.

As explained earlier, factual disputes preclude the Court from granting summary judgment for Defendants on the executive exemption. Because Defendants rely on almost

_____

[15]    The Undersigned, when viewing the facts in the light most favorable to Plaintiff, does not interpret the email where Plaintiff informed other medical assistants that failure to abide by a policy would be accepted as their immediate resignation [ECF No. 86-23] as power to fire or control over schedule. Beyond the statement Defendants' highlight, the email tells the medical assistants to contact Maurice (not Plaintiff) with issues, which could indicate that Plaintiff does not have input over the decisions. Thus, that interpretation would demonstrate only that Plaintiff was, on that occasion, a mere mouthpiece for Maurice.

identical evidence for the administrative exemption as well, the same factual disputes also preclude granting summary judgment for Defendants on the FLSA's narrowly-construed administrative exemption.

## IV.     Conclusion

The existence of a material factual dispute precludes granting summary judgment. *P.W.S. Int'l, Inc. v. Caribbean Freight Sys., Inc.*, No. 06-22624, 2007 WL 9705870, at *1 (S.D. Fla. Dec. 17, 2007). This case is riddled with factual disputes on issues critical to Defendants' claim that Plaintiff is exempt from the FLSA's overtime protections.

Therefore, the Undersigned **respectfully recommends** that the District Court **deny** Defendants' motion for summary judgment.

## V.     Objections

The parties will have 14 days from the date of being served with a copy of this Report and Recommendations within which to file written objections, if any, with the District Judge. Each party may file a response to the other party's objection within 14 days of the objection. Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in the Report except upon grounds of plain error if necessary in the interests of justice. *See* 29 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

**RESPECTFULLY RECOMMENDED** in Chambers, Miami, Florida, on January 28, 2022.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE


<u>**Copies furnished to**</u>:
The Honorable Marcia G. Cooke
All counsel of record